United States District Court
District of Connecticut
FILED AT BRIDGEPORT
8/2 20 24
Dinah Milton Kinney, Clerk
By_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 475-225-6211 | Case No. 3:24 mj 685 (SDV)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Matthew Loucks, a Special Agent of the Federal Bureau of Investigation ("FBI"), New Haven Division, having been duly sworn, state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United Sates Code. I have been employed as a Special Agent with the FBI since March 2020. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in diverse criminal matters, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. Prior to my employment as a Special Agent for the FBI, I spent five years employed as an Intelligence Analyst for the FBI, and four years employed as a Contractor Analyst for the Department of Treasury, Financial Crimes Enforcement Network ("FinCEN").

2. I am currently assigned to the FBI New Haven Violent Crimes Squad which is comprised of special agents from the FBI, with troopers from the Connecticut State Police, and with detectives and officers of various area police departments. In my current role, my particular emphasis is the investigation of matters including, but not limited to, robberies (including bank

robberies and Hobbs Act robberies), carjackings, firearm violations, mass killings, fugitives, kidnappings, assaults on federal officers, and murders-for-hire. Prior to my current role on the Violent Crimes Squad, I was assigned to the FBI Bridgeport Safe Streets Task Force ("BSSTF"). The BSSTF is comprised of special agents from the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), with troopers from the Connecticut State Police, and with detectives and officers of various area police departments, including the Bridgeport Police Department ("BPD"), Norwalk Police Department, and Trumbull Police Department. The focus of the investigative efforts of the BSSTF is crime related to violence, guns, and drugs, often perpetrated by organized groups or gangs.

3. During the course of my career as a FBI Special Agent, FBI Intelligence Analyst, and FinCEN Intelligence Analyst, I have participated in investigations of diverse crimes, including investigations into suspected homicides, kidnappings, narcotics trafficking, violent criminal activity, racketeering, and money laundering. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential sources; writing and executing search and arrest warrants; providing testimony in federal grand jury and state court proceedings; analyzing records related to narcotics trafficking, violent criminal activity, and money laundering or other violations of the Bank Secrecy Act; reviewing and analyzing cellular records and cell site location information; and reviewing and analyzing social media records and information. I have participated in investigations into national and transnational organized criminal enterprises, including violent street gangs and large-scale narcotics trafficking organizations. I have attended gang and narcotics trainings sponsored by federal law enforcement. Finally, I have participated in investigations involving the use of court-authorized interception of wire and electronic communications.

4. I am one of the case agents that have directed the investigation that is the subject of this Affidavit, in conjunction with members of the BPD. I have participated fully in this investigation, and, as such, I am familiar with the circumstances of the investigation and the information set forth in this affidavit. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Further, I am a "federal law enforcement officer" within the meaning of the Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws as duly authorized by the Attorney General to request a search warrant.

5. I make this affidavit in support of an application for the following: (1) a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **475-225-6211**, which is described in Attachment A, and hereafter referred to as "**TARGET CELLULAR DEVICE**"; (2) an order authorizing installation and use of a pen register device or process, a trap-and-trace device or process, and for the disclosure of certain electronic communications records and/or information regarding the **TARGET CELLULAR DEVICE**; (3) an application for an order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing Agents of the FBI to ascertain the physical location of **TARGET CELLULAR DEVICE**, including but not limited to, E-911 Phase II data (or other precise location information) concerning the **TARGET CELLULAR DEVICE** ("Requested Information"), for a period of thirty (30) days. The **TARGET CELLULAR DEVICE** is described herein and in Attachment A to the search warrant, and the location information to be seized is described herein and in Attachment B to the search warrant.

6. One purpose of applying for this warrant is to determine with precision the

3

TARGET CELLULAR DEVICE's location. There is reason to believe the TARGET CELLULAR DEVICE is currently located somewhere within this district because, on July 31, 2024, I observed the person whom I believe uses the TARGET CELLULAR DEVICE, that is, Montel Caple, at the Bridgeport, CT residence of his mother which she had previously identified as her son's residence in interactions with police in June 2024. She also gave police the number of the TARGET CELLULAR DEVICE as her son's phone number in the last week of July 2024. Further, I obtained a pen register/trap and trace device on social media accounts used by Caple which show IP addresses in Connecticut as of July 31, 2024, and I am aware that people commonly use their cellular telephones to access social medial accounts. Further, the area code for the TARGET CELLULAR DEVICE, that is, "475," is located in southwestern Connecticut, including Bridgeport, Stamford, Waterbury, Norwalk, and New Haven. I am aware, through my investigation, that Caple has lived in Bridgeport, is normally found in Connecticut, and is closely associated with other Connecticut residents, in addition to his mother, for years. Pursuant to Rule 41(b)(2), law enforcement may locate the TARGET CELLULAR DEVICE outside the district provided the device is within the district when the warrant is issued.

7. I know that a federal grand jury recently returned an indictment, charging Caple and others with violations of the federal narcotics laws, including 21 U.S.C. §§ 846 and 841, and that, on July 18, 2024, an arrest warrant was issued for him. Thus, a grand jury has found probable cause to believe that Caple has violated the aforementioned statutes. I am aware that persons closely associated with Caple were questioned by law enforcement recently and were shown Caple's photograph. Thus, I believe there is a strong possibility that Caple is aware that he is under federal investigation. There is probable cause to believe that the TARGET CELLULAR DEVICE's location will assist law enforcement in arresting Caple, who is a "person to be arrested"

within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

9. This Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10. The indictment that has been returned against Montel Caple and others is based on an investigation into the drug trafficking activities of a group of individuals operating in and around Bridgeport, and in other Connecticut cities. The group communicated with each other in relation to their drug distribution over cellular devices, with Caple often using the **TARGET CELLULAR DEVICE** to contact his co-conspirators.

11. As noted in paragraph 6 above, my investigation has linked Montel Capel to the **TARGET CELLULAR DEVICE** in several ways. First, Caple's mother was questioned by police at her Bridgeport residence on June 3, 2024, and during that conversation, she said that her son lived with her. Police asked for her son's telephone number, and she gave them the number of the **TARGET CELLULAR DEVICE**. She gave that same number to a detective who spoke to her by phone on July 30, 2024. Second, I received records from Verizon Wireless for the **TARGET CELLULAR DEVICE**. The subscriber is Alenaja Ramos, whom I know from my

5

investigation to be the mother of Caple's daughter. The Verizon records also show that the length of service on the **TARGET CELLULAR DEVICE** is from January 14, 2022 to the present. Third, I have queried FBI databases that provide financial source information from as recent as July 15, 2024 that identify Caple as the user of the **TARGET CELLULAR DEVICE**. Fourth, I obtained a pen register/trap and trace device on Caple's social media accounts (Facebook and Instagram) and they show IP addresses from Connecticut as of July 31, 2024. I am aware that persons commonly access their social media accounts using their cellular devices. Fifth, in the spring and summer of 2023, I participated in a wiretap investigation of cellular telephones used by associates of Caple. He was intercepted over the wiretap using the **TARGET CELLULAR DEVICE** in conversations that discussed criminal activity. Sixth, I have listened to prison calls made by one of Caple's associates and a co-defendant in the indictment that was recently returned. That associate spoke to someone using the **TARGET CELLULAR DEVICE**, and I recognized the voice of that person as Caple's. Given that there has been a warrant issued for Caple's arrest, I need to ascertain with specificity where he is residing so that the warrant can be executed safely for all concerned and without disruption to persons who are not involved in the underlying case. Locating the **TARGET CELLULAR DEVICE** should enable me and law enforcement working with me to do that.

12. In my training and experience, I have learned that Verizon Wireless ("Service Provider") is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that

6

received a radio signal from the cellular device and, in some cases, the "sector" *(i.e.,* faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

13. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **TARGET CELLULAR DEVICE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

14. Based on my training and experience, I know that Verizon Wireless also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

15. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

7

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

16. Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET CELLULAR DEVICE**'s user or users and may assist in the identification of co-conspirators and/or victims.

17. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from

8

the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. Because, as explained above, these towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas, and because the tower closest to a wireless device does not necessarily serve every call made to or from that device, cell-site data is typically less precise that E-911 Phase II data. 43. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **TARGET CELLULAR DEVICE**, including by initiating a signal to determine the location of the **TARGET CELLULAR DEVICE** on the Service Provider's network or with such other reference points as may be reasonably available.

## MANNER OF EXECUTION OF CELL SITE SIMULATOR

18.   In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

19.   To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **TARGET CELLULAR DEVICE** or receiving signals from cellular devices, including the **TARGET CELLULAR DEVICE**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **TARGET CELLULAR DEVICE** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **TARGET CELLULAR DEVICE** and use that information to determine the **TARGET CELLULAR DEVICE**'s location, even if it is

located inside a house, apartment, or other building.

20. The investigative device may interrupt cellular service of phones or other cellular devices within its range. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **TARGET CELLULAR DEVICE**, the device may briefly exchange signals with all phones or other cellular devices in its range. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **TARGET CELLULAR DEVICE**, and law enforcement will limit collection of information from devices other than the **TARGET CELLULAR DEVICE**. To the extent that any information from a cellular device other than the **TARGET CELLULAR DEVICE** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **TARGET CELLULAR DEVICE** from all other cellular devices.

## AUTHORIZATION REQUEST

21. Based on the foregoing, there is probable cause to believe that the use of a cell site simulator will help investigators determine the location of the user of the **TARGET CELLULAR DEVICE** so that law enforcement agents can conduct physical surveillance to locate and gather additional information pertaining to Caple's location.

22. WHEREFORE, I request that the Court issue the proposed search warrant for a cell site simulator, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123. A search warrant may not be legally necessary to compel the investigative technique described herein (i.e., the use of a cell site simulator). Nevertheless, I hereby submit this warrant application out of an abundance of caution.

23.  Further, based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the **TARGET CELLULAR DEVICE**, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

24.  I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

25.  I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELLULAR DEVICE** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The FBI shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

26.  I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there

11

is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELLULAR DEVICE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET CELLULAR DEVICE** outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

**MATTHEW LOUCKS**
Digitally signed by MATTHEW LOUCKS
Date: 2024.08.02 14:42:05 -04'00'

**MATTHEW LOUCKS**

Special Agent

Federal Bureau of Investigation

Subscribed and sworn to ~~before me~~ over the telephone pursuant to Fed. R. Crim. P. 4.1

On: 8/2/24

SDV

THE HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

1. The **TARGET CELLULAR DEVICE** is a cellular telephone assigned the telephone number **475-225-6211** that is believed to be in the custody and control of Montel Caple, whose wireless service provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, New Jersey.

2. Information about the **TARGET CELLULAR DEVICE's** location is within the possession, custody and control of Verizon Wireless ("Service Provider") as described in Attachment B, including information about the location of the cellular telephone(s) if it is subsequently assigned a different call number or handset.

3. This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **475-225-6211**, whose wireless provider is Verizon Wireless, whose listed subscriber is Alenaja Ramos, and which is believed to be used by Montel Caple.

## ATTACHMENT B

**I. Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the **TARGET CELLULAR DEVICE** listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELLULAR DEVICE** for the time July 19, 2024 **to the date of this order:**

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifier (MEID); Mobile Identification Number (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Number (MSISDN); International Mobile Subscriber Identity Identifiers (IMSI), or International Mobile Equipment Identities (IMEI);

vii. Other subscriber numbers or identities (including the registration Internet Protocol (IP) address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

2

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET CELLULAR DEVICE**, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as Timing Advance Data and/or per-call measurement data (also known as "real-time tool" or "RTT").

c. For a period of 30 days from the date of this warrant, information about the location of the **TARGET CELLULAR DEVICE**, during all times of day and night, and information associated with each communication to and from **TARGET CELLULAR DEVICE**, including:

   i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii. Source and destination telephone numbers;

   iii. All available E-911 Phase II data, GPS data, latitude-longitude data, mobile locator information, Network Event Location Operating System information (NELOS), precision GPS location information, handset location data, handset triangulation data, engineering data set, PCMD (per call measurement data, and location information derived therefrom), Real-Time Tool (RTT) data, timing advance information, distance-to-tower information, and Web Map;

   iv. Date, time, and duration of communication; and

   v. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TARGET CELLULAR DEVICE Subject Telephone 2** will connect at the beginning and end of each communication as well as Timing Advance Data and/or per-call measurement data (also known as "real time tool" or "RTT."

d. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of

3

the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELLULAR DEVICE** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

e. In approving this warrant, the Court finds reasonable necessity for the seizure of the location information. See 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the seizure of any tangible property or the contents of any communications.

f. The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, under the same docket number, authorizing a pen register and trap-and-trace device for the **TARGET CELLULAR DEVICE.**

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. § 841 (Possession with the Intent to Distribute and Distribution of Narcotics) and 21 U.S.C. § 846 (Conspiracy to Distribute and to Possess with the Intent to Distribute Narcotics) involving the user of the **TARGET CELLULAR DEVICE** and the user's associates for the period from July 19, 2024 through thirty days after the date of this warrant.

## III. Cell Site Simulator

Pursuant to an investigation of Montel Caple for a violation of 21 U.S.C. §§ 846 and 841, this Warrant authorizes the officers to whom it is directed to determine the location of the **TARGET CELLULAR DEVICE** by collecting and examining:

1. radio signals emitted by the **TARGET CELLULAR DEVICE** for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the **TARGET CELLULAR DEVICE** in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).